We will go to the third case, Laskar v. Hurd. Mr. Daly. May it please the court, I am Michael Daly. I represent Dr. Joy Laskar O'Feller. And you have the question that the court has directed us to focus on. I simply wanted to attempt to answer those questions and in an effort to move quickly, I thought I would do it in reverse order because there may be more questions and more time that you wish to address with respect to the first set of questions. But with respect to the question that the court had, whether a dismissal on timeliness grounds would be a favorable termination at common law when section 1983 was enacted in 1871. I could not find any explicit authority, but I did find treatise authority pointing out that the common law recognized no period of limitations and indictment could be brought at any time. And J. Stephen writing in a history of the criminal law of England in 1883 was quoted as saying time does not run against the king. Worden in criminal tweeting and practice, section 3106 page 209, an 8th edition published in 1880 said there is at common law no absolute limitation, which prevents the prosecution of offenses after a specified time has arrived. Which I guess, when I look at the common law cases, I found several and some treatises. It seemed to me that the common law recognized that a favorable termination was one that ended the prosecution. Not, and it did not matter so much whether, well, it did not have to be an acquittal. It did not matter so much even whether there could be a re-prosecution, that is a re-institution of charges. That so long as that case had terminated in the defendant's favor, that's good enough for this element of malicious prosecution. Did you find anything one way or another about that? Well, I found several jurisdictions that support what you just described. I found in Georgia a case that basically was saying, you know, the acquittal of an indictment because the prosecuting party does not appear would still be sufficient evidence of the termination of the prosecution. Cook v. Walker at 30 Georgia 519, though it's not common law, in 1858 the General Assembly in Georgia entailed three commissioners to create a code of Georgia and instructed them that they should look at the common law, the constitutions, and the statutes, and so forth. And in that code, which was published in 1873, section 2989 says as to when the right of malicious prosecution accrues, quote, the prosecution must be ended before the right of action accrues. So again, being consistent to the extent that those commissioners were pulling together common law authorities. In Louisiana, 15- Well, they didn't follow the common law. They didn't have common law in Louisiana. That's true, but I did find a case that said, to maintain an action plan, it must prove that the prosecution has had an end. In Kansas, there were two cases that were both in 1873, Kelly v. Fay at 12 Kansas 109. A verdict in judgment was not necessary, sufficient if there was a dismissal before trial. And in Marburg v. Smith at 11 Kansas 554, these are both Supreme Court of Kansas cases, but it is not necessary that there should have been a trial on the merits of the alleged malicious prosecution if the action has been dismissed. That is sufficient if the action has not been commenced again. So also in Indiana, a case called Lever v. Mule, 57 Indiana 423. This was decided in 1877. We think this is sufficient to authorize the jury to find that the prosecution was at an end where the accused had appeared on two separate occasions for a trial, but he was- eventually was allowed to go at his own liberty. Let me ask you a question. I agree with everything you said, except that to me it didn't seem like it was completely clear what the standard was. For example, the- I think it was the New York Appellate Court held that criminal charges against the plaintiff needed to be dismissed on the merit, either by the grand jury or at trial, in a case from 1849, so a little bit earlier. And the court in Massachusetts also had a similar conclusion. So- but you're right. There were a number of cases that said that it had to be- that it just had to be ended. And then it seemed to me that there was reasonable support in the case law, maybe for the position that the termination just needed to not be inconsistent with innocence. What are your thoughts on that? Well, obviously, if I'm not mistaken, that was one of the arguments that I highlighted in this highest court in New York when it was addressing the indication of innocence standard, and because they had a speedy trial issue in that case, the judge who wrote the opinion was stating that not inconsistent with innocence would be what he thought would be the better standard. And- Well, doesn't that really make sense? If one of the elements you have to prove is the absence of probable cause for the prosecution. It seems to me that we're asking too much of a favorable termination element if we're asking that it has to be based on an indication of innocence. And it basically makes the absence of probable cause element irrelevant. Well, I mean, I certainly find that to be the more persuasive, and it obviously assists my client in this case. But I do think it just makes more sense because otherwise you're going to, you know, when you bring the malicious prosecution action, you do have to demonstrate the absence of probable cause. And that is- Well, let me ask you this, counsel, because our time will be limited this morning. I want to make sure I have in mind clearly what seizure we're talking about. You filed a long complaint. Some might even term it bordering on a shotgun. Now, in fairness, I mean, I understand you wanted to point out all the details and show the diligence that had been exercised by you in filing the complaint. I get all that. But it's not clear to me that you've brought a claim under the Fourth Amendment. You did not bring a supplemental claim under Georgia law for malicious prosecution. I'm not sure why, but you didn't. So this has to be rooted in a Fourth Amendment seizure. Your complaint alleges facts about arrest warrants for which some of the defendants would have provided some testimony or statements, but also later an indictment. It's not clear to me which produced the seizure. It looked to me like it's at least the arrest warrant where maybe there was a perp walk or something like that that would support a Fourth Amendment seizure claim. But it was not clear to me whether the indictment actually led to a seizure of your client's person. And how are we to figure that out? Well, perhaps I can supply some additional dates and a timeline for you. The initial search where there were some 21 separate warrants executed and there was lots of television coverage because Georgia Tech had violated its own faculty handbook and the Board of Regents manual by making press releases when this was supposed to be handled on a confidential basis. That was on May 17 of 2010. And so part of your complaint at least is that the seizure of your client pursuant to that warrant was a Fourth Amendment seizure for which there was no probable cause. That is correct, Your Honor. And that's it? Is that the only seizure of his person? Well, he was arrested at a later date on September 24, 2010. He posted a bond. Based on what? What was that arrest? Was there another warrant? And here, Your Honor, I'm embarrassed because I have not seen the paper. When I received your direction as to the issues that we would, I went back and interviewed Mr. Gillen. Minutes remaining. Keep going, counsel. I interviewed Mr. Gillen who was Dr. Laskar's counsel and he pointed  out that he was advised that papers for an arrest were available and would, you know, he wished to work something out. They had a cordial relationship. Was that a voluntary then appearance? He did. He did voluntarily appear at the Fulton County Police Station is my understanding. And that was confirmed to me by Dr. Laskar and that he was processed. But to be clear, it was voluntary because he was told there was a warrant that he would be arrested if he didn't voluntarily appear? He was informed that there was a warrant for his arrest. That's correct. And is that set out in the complaint as also being a seizure? I mean, again, the problem with this complaint is how many seizures are we talking about and which ones are the basis for a Fourth Amendment claim? Well, I would think that based on the authorities and it's quite possible that I have not highlighted something in my complaint, which I should have despite its length. But clearly the May 17, 2010 seizure of property, I mean, this was an extensive one that went to not just his personal family and professional and office, but his vehicles, his labs, his different offices at Georgia Tech. These are items. Well, tell me this. Did the indictment, did that lead to a seizure? I'm not aware of any further seizure that was related to that. Okay. That's helpful. That's very helpful. But there was, according to Dr. Laskar on September 24 and Mr. Gillen, you know, when his arrest was processed, he was there for an entire day. And once again, television cameras were invited and he, whereas Mr. Gillen was attempting to have this take place in the privacy of the police station, the GBI agents informed him that they would need to move to a different part of the building and then they took him outside where television cameras could catch him in a perp walk then. So it took an entire day for him to be there. And according to Dr. Laskar- Well, here's the problem I have. If the indictment's out, if that's not the basis for the Fourth Amendment seizure, it seems to me Garton and Allen are out. Because the complaint does not allege that Garton and Allen made any statements to support the warrant. Oh, I would disagree, Your Honor. It was Garton and Allen who actually were the genesis of the entire investigation. They went to Mr. Hurd to request that a certain cost overrun be undertaken. And what was really of concern to Ms. Garton at the time was that because- Well, the complaint alleges that the warrant affidavit disclaimed getting any information from anyone other than Hurd and his team. It does state that Special Agent Verassi states that all of the information was provided directly to Hurd by Phil Hurd, who is the Director of Audit at Georgia Tech and who was the person who Ms. Garton and Dr. Allen were in communication with about the investigation. Mr. Jenkins was working with Mr. Hurd. He was also in the audit office, and he was present along with Mr. Hurd when the warrants were presented to the two judges in Cobb and Fulton County, respectively. Mr. Jenkins was also tasked with actually accompanying them to execute the warrants, and he actually undertook to question witnesses. All right. You're over your time. Does anyone, Judge Rosenbaum, Judge Moore, do you all have any questions? I don't want to eat into his rebuttal. No, I'm good. Thanks. Okay. You've saved three minutes for rebuttal, Mr. Daley. Mr. Petrelli? Yeah, Mr. Petrelli. May it please the Court, good morning. I wanted to address the seizure question first, and then I would address the common law,  with respect to whether the amended complaint states a claim for a federal malicious prosecution claim focusing on seizures. I contend that it does not. We have two different incidents that occurred early on. One is specifically referred to under specific allegations about a search and seizure warrant of property, where Appley Heard is identified as the only of the four of my clients who provided information to GBI agent Varasi, but that only led to seizure of property. We're not talking about liberty, a loss of liberty, which would be an arrest of Dr. Lascar's person. There is one reference to an arrest in paragraph 199 of the amended complaint, and then in another paragraph, there is a reference to a perp block. What we don't know is when did this arrest occur? Did somebody else provide information that led to this arrest? We could assume that the prosecutor had four months based on the September date that was provided by counsel, although that's not in the complaint. The prosecutor could have, at that point, had an independent determination that there was justification to arrest Dr. Lascar, but we don't know whether it was pursuant to a warrant. If it wasn't pursuant to a warrant, it would not be a malicious prosecution claim, because as the court emphasized in Williams v. Aguirre earlier this month, it has to be pursuant to legal process for you to state a claim for malicious prosecution. We don't know what connection, if at all, any of the four Appley's had to the arrest of Dr. Lascar. So I would suggest that there's a failure to state a claim for a federal malicious prosecution claim. We also know from the Kingston v. Miami case that there's no— the 11th Circuit, like other circuits, does not recognize a continuing detention absent a significant deprivation of liberty for pretrial release conditions, and we don't know anything about that either. We don't know how long the arrest was. We don't know anything about a bond. We don't know anything about pre-release or pretrial release conditions. So there's just so many factors that are missing in the four corners of the amended complaint. If I could shift to the common law question, I do respectfully disagree— I thought there was. I've been searching in the complaint. I thought there, in fact, was an allegation of an arrest of his person. Are you saying that if I go through this complaint, there's not one? No, sir. I referenced in paragraph 199 of the amended complaint, which was not even in the factual part. That was more of a count. There's a reference to an arrest, but there's no factual allegations of the nature of the arrest. Was it pursuant to a warrant? Because the warrants we've alleged that warrants were issued for several things, including his person. There was a list, an indented list, some of which was property and one of which was his person, and then a general allegation that the execution of those warrants occurred. No? That may be correct. I don't have the amended complaint in front of me, but even if it was alleged like that, as represented to the court by Mr. Daley, the arrest of his person occurred four months later, and we don't know the circumstances of that arrest. He's very clear in the allegation— If it's alleged that he was arrested pursuant to a warrant, for which there was not probable cause, it seems to me that just as a pleading matter, he's alleged enough. No? I would disagree because we need more facts regarding what my clients did or did not do with respect to the actual arrest. With that gap of time, you have causation issues. We don't know. In my qualified immunity section, I cite Barnes v. Joyner about intervening factors which would release somebody who's alleged to have instigated a malicious prosecution, and here we have four months, and the prosecutor could have looked at all the property that was seized, all the evidence, the computers, and come to an independent determination that there was probable cause to arrest Dr. Laskar. There's a reason that there was a gap. It's not alleged why there was a gap, but there was a four-month gap there. As far as the common law question, I respectfully disagree about the indication of innocence. When I look to the— I found a couple of state Supreme Court cases that clearly say that in an action for malicious prosecution, it is well settled that the prosecution must be shown to be at an end, and it must also appear that the plaintiff was acquitted at the charge. One of the cases is Fortman v. Rodier— Well, if he comes to an end— This came to an end, right? A dismissal based on statute of limitations, the prosecution has come to an end. Yes, but then it goes further and says there must have been an acquittal, and that goes to the question of innocence or guilt. It doesn't say clearly that somebody— Counsel, are you telling me that when you looked at the common law cases from this era, that you found a consensus of common law courts that not only did the termination have to end the prosecution, but it had to be an acquittal? Because I can tell you, I can cite you numerous cases that don't say that. I believe that there was a split, but if you look at the Supreme Court case of 1861, Wheeler v. Nesbitt, which is cited in the Williams v. Aguirre, as well as the Meads v. Bartlett case, the Supreme Court case, the Supreme Court of the United States in 1861, which predates the enactment of Section 1983, said, to support an action for a malicious criminal prosecution, the plaintiff must prove in the first place the fact of prosecution, the defendant was himself the prosecutor, or that he instigated his commencement, and that it finally terminated in his acquittal. So again, there's that concept of acquittal, which goes to guilt or innocence. I know Heck v. Humphrey, they again talked about concerns about parallel litigation over issues of probable cause and guilt, and that was from 1994, I believe. And when they referenced guilt, it's the Supreme Court is suggesting that the favorable termination element of a malicious prosecution claim has some bearing of it is on the innocence or guilt of the plaintiff. So I believe that, yes, you can find cases that talk about simply a termination of the case, but there's also a body of law in the common law among the states that references this concept of acquittal, including the Supreme Court case in Wheeler v. Desmond. Let me ask you something. I mean, it seems to me, first of all, would you agree that there's not a clear consensus as to the common law and whether an indication of innocence needs to be, it has to be, whether it has to be an acquittal, whether it just has to end or whether it just has to not be inconsistent with innocence. Would you agree that the cases are sort of all over the place? I agree that cases fall on both sides of the equation, but I put a lot of precedential value on the United States Supreme Court case of Wheeler v. Desmond. You could argue that the highest court of the land in 1861 was saying that in order to be a favorable termination, nothing short of an acquittal would allow you to move forward with a case. Well, we'll look at that case. I don't think that case says that, but that it holds that anything less than an acquittal doesn't satisfy the favorable termination requirement. Are you saying the case stands for that proposition, anything less than acquittal, that the case holds that that would not satisfy favorable termination? I'm saying that if you literally read the words, you could make that inference, but as I've argued in my brief... I'll take that as a no, then. You're not saying it holds that anything less than that? No. I mean, most of the federal cases, the circuit cases, talk about all these situations that fall in between what you would say would be an acquittal. There's lots of times where you have to sort of look at the facts, like in no-prose cases, to see why did the prosecutor dismiss the claim? For instance, in the Uvo Reno case, which was a case where there was an indication of innocence based on the specific facts, and then in the unreported case that I cited, Stepanovich, the court said in this situation, when there was a dismissal by the prosecutor that only reflected the sound exercise of his or her discretion, that that was not an indication of innocence. So no, I don't think it's an all-or-nothing proposition. But I do think that the United States Supreme Court was recognizing in the common law as of 1861 that there was a recognition that you must have an indication of innocence in order to move forward with a malicious prosecution claim. So if there isn't a clear consensus, and if at least some of the law favors the idea that determination just has to not be inconsistent with innocence, why isn't that the best answer in light of the fact that we want that the element of determination has to mean something different than the element of probable cause? And also the fact that the whole idea behind a malicious prosecution action is to prevent prosecutors and law enforcement, I guess, from maliciously when there's no real case there. I mean, why wouldn't the best interpretation be that it just has to be a determination that is not inconsistent with innocence? Well, I think the way the federal courts, including UBO, have interpreted is as long as it's not inconsistent with the guilt of the accused. I mean, in our case, we have a statute of limitations dismissal, which I don't believe opposing counsel really argued. It's not inconsistent with innocence. Well, I would contend that statute of limitations... Even UBO recognized that. I mean, UBO, it seemed to me, I mean, it's totally dicta, but it seemed to me UBO recognized that that's not inconsistent with innocence. Well, I would suggest that a statute of limitation dismissal is a procedural dismissal that does not reflect on the merits of the case, does not answer the question of whether the... It's not inconsistent with innocence, though. I can see that point, but I don't think that's the standard. There has to be an indication of innocence, and with a statute of limitations... That returns us to Judge Rosenbaum's question, which is, why isn't that the better rule? I mean, you already have... The plaintiff already has to prove the absence of probable cause. That seems to me to do all the work necessary on this issue. Why would you also require that the favorable termination requirement go even further and be based on some indication of innocence? Well, I would because it's a... First of all, it's one of the elements of the claim. It has to be recognized and given effect. I know we're trying to make sense, though. If there wasn't just a clear line of authority on one side of the common law in the 1870s, although I will tell you, my own reading is there was pretty much a consensus against you on this. Now, there are authorities going both against you, but even if we say it's a split, it's a split down the middle, why doesn't it make more sense to read it as a requirement that the termination not be inconsistent with innocence as opposed to be based on an indication of innocence when you already have to prove as a plaintiff the absence of probable cause? Well, probable cause and favorable termination go to different concepts. Probable cause asks whether the case, when it was initiated, was legally justified in favorable termination. In favorable termination, as I've noted, goes to whether or not there's any indication of innocence. I understand the suggested alternate rule. I just believe that the weight of authority, you know, the federal interpretation of the many circuits, including UBO, has adopted the indication of innocence standard, and this court would be ignoring all that precedent. That is the way... Well, a lot of other circuits have looked at modern common law and looked at modern restatements, and the Supreme Court's told us that's not what we're supposed to be looking at, so I don't know how helpful they are. Okay. Well, again, I'll return to my earlier point that I believe that... Well, Mr. Paterno, do you know of any case where any of our sister circuits have looked at what the Supreme Court has told us recently we should be looking at, which is the common law from the time of the adoption of Section 1983? No, Your Honor, I'm not. Okay. Judge Rosenbaum, Judge Moore, do y'all have any questions? I do not, thank you. I do not. Okay, Mr. Paterno. I think we understand your case. Let's hear a few minutes of rebuttal from Mr. Daley. Thank you, Your Honor. There's another Supreme Court case decided in 1879 called Stewart v. Sonnenborn. It was a case dealing with actions that had taken place as early as 1866. The trial was in 1873, but it has this note, and it's, I think, pertinent to what you were... the colloquy you were having with opposing counsel. It states, in every case of an action for a malicious prosecution or suit, it must be averred and proved that the proceeding instituted against the plaintiff has failed, but its failure has never been held to the evidence of either malice or want of probable cause for its institution, much less that it is conclusive of those things. So it implicates the policy argument that I hear you and Judge Rosenbaum articulating, and which I do think leads us to the more sensible construct for how we decide this question. And even though, you know, in our... in my presentation, we started talking about cases that you had found, Your Honor, I did have other cases from Kansas, Indiana, North Carolina, Michigan, New Jersey, Texas, and Illinois that all support the concept that the termination of the action is what the court is trying to ensure so that there won't be any chance of conflicting or competing resolutions, and that the malicious prosecution case can then proceed in that manner. With respect to the question about the complaint, the amended complaint's reference to an arrest, at paragraph 199, it reads as follows, the actions and omissions of defendants resulted in plaintiff's arrest, in the wrongful and unlawful seizure of his private property and papers, and in the seizure and criminal prosecution of his person. Dr. Laskar was deprived of his personal liberty, of his ability to secure gainful... Where is this allegation? What paragraph? Paragraph 199 on page 99 of the amended complaint. And that's... I think it's tab... My peers... Here's the thing that you need to keep in mind, counsel. This complaint appears to be drafted on a misunderstanding of federal law, and that is that a malicious prosecution claim that is a common law tort analog for a Fourth Amendment seizure claim is just as expansive and broad in a mirror image of what a malicious prosecution claim would be under state law. And if you could complain about it at the common law, in state law in Georgia, and you can refer to principles of Georgia law at the beginning of the amended complaint, then you can equally complain about it under the Fourth Amendment, and that's just not true. I'm just... You have... The complaint has to be focused on a particular seizure. And I just commend that to you. You haven't alleged a claim under state law, which might actually allow a broader theory of liability. Of course, it doesn't bring in 1988 in those attorney's fees, which might have something to do with this, but... Well, and it also has an objective standard under the federal construct, which I think, in the context of these people making this report to the state officials, makes more sense for the prior fact to work through. But I hear you, Your Honor. Yeah, you brought it in federal court. You pleaded it as a federal law claim. I'm just telling you, it's unfocused and appears to be based, at least in part, on a misunderstanding of the way the law works in this area. You hear what I'm saying? I hear exactly what you're saying. And that's why I'm prepared today to say that there is a Fourth Amendment seizure with respect to the May 2010 search warrant. There is a seizure having to do with the arrest on September 24, 2010, pursuant to what I'm informed is an arrest warrant. And I now have 30 boxes from Mr. Gillen's office that have been brought to me so I can pour through them to see if I can find the piece of paper that I need. And I would like to supply it if I can. But finally, I do think that the indictment, while it did not result in depriving any liberty, I mean, it was not taken into consideration. Well, see, I'm not sure that gets you anywhere with the Fourth Amendment. It might get you somewhere in state law, which you didn't plead. But I don't see where that gets you something under the Fourth Amendment, if it didn't result in a seizure. More modestly, doesn't it just simply provide evidence that this was ultimately a seizure leading to and part of a criminal prosecution? I don't think a prosecution in and of itself means a person has been seized. I hear you. I'm not trying to argue that, Your Honor. I just... Well, you're well over your time. This is maybe one of the most interesting case of the week, certainly one of the most. And we're going to do our best with it, Mr. Daley. So we thank you. Thank you, Judge. Thank you, Your Honors.